No. 28,406.

C. D. WILLIAMS, as Administrator of the Estate of Elias K. Sechler, Deceased, *Appellant,* v. MARY A. SECHLER, *Appellee.*

(273 Pac. 447.)

Opinion filed January 12, 1929.

*Ross McCormick,* of Wichita, for the appellant.

*Robert C. Foulston, W. E. Holmes, D. W. Eaton, George Siefkin, Sidney L. Foulston* and *Lester L. Morris,* all of Wichita, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The action was one by an administrator to compel a widow to abide by written consent to a will, the question being whether her rights under the law had been explained to her at the time of execution of the consent. The widow prevailed, and the administrator appeals.

The facts are substantially told in the court's findings, which follow:

"1. Elias K. Sechler and the defendant herein married in 1895. Each had been married before and each had children by the prior marriage. The greater part of the property owned by the husband at the time of his death had been accumulated since his marriage to the defendant.

"2. On February 14, 1925, Mr. Sechler had his will drawn, and desiring to

secure the consent of his wife to the provisions thereof he informed her of the making of the will and asked her to go with him to his lawyer's office and sign the will. The provisions of the will were not discussed. The defendant accompanied her husband to the lawyer's office where the will was read to her. She was asked if she was satisfied with the will and she answered that she was. The lawyer then wrote on the will below the signature of the testator the following words: 'I hereby approve and affirm this will.' The defendant then signed her name in the presence of two witnesses.

"3. At the time she signed her name, defendant had not been informed, nor did she know, what her rights were under the law with respect to her husband's property disposed of by the will. She did not know that in the absence of consent given, she might after the death of her husband elect to take under the law. Under the circumstances shown, the consent of the wife was not fairly and understandingly given."

The court concluded that the relief prayed for should be denied.

The plaintiff contends that written consent by the wife to the husband's will cannot be successfully attacked. Numerous cases are cited in support of the contention which in our opinion are not applicable to the facts before us. The pertinent statute reads:

"No man while married shall bequeath away from his wife more than one-half of his property, nor shall any woman while married, bequeath away from her husband more than one-half of her property. But either may consent in writing, executed in the presence of two witnesses, that the other may bequeath more than one-half of his or her property away from the one so consenting." (R. S. 22-238.)

The defendant testified that she was 65 years old; that she and the testator were married in 1895; that her husband at that time had a claim in Oklahoma—nothing else. That she went there with him to live; that when they moved there, there was a sod house and a sod stable; that they lived there from 1895 to 1912. That she had four children at the time of her marriage to the testator and he had four; that she took care of his children as her own for a number of years. That they lived there and improved the farm, erected buildings, raised crops and chickens and the money was used to improve the farm and was all put in a common bank account. That they eventually sold their farm to one of the testator's sons for a consideration of $15,000 or $16,000. That a home in Wichita was paid for after the son bought the Oklahoma farm; that it was worth approximately $2,500 and was encumbered for $500. That her husband was 78 years old when he died. That about a year previously she went with him to the lawyer's office; that the will was read to her there, but that she did not understand it. The will in question

provided payment of $1,000 to the defendant and one-fifth of the estate. It will be noted that the court found that the greater part of the property owned by the husband at the time of his death had been accumulated since his marriage to the defendant. Also, that at the time she signed her name she had not been informed, nor did she know, what her rights were under the law with respect to her husband's property disposed of by the will. She did not know that in the absence of consent given she might, after the death of her husband, **elect to take under the law. The statute provides that** either husband or wife may consent in writing "that the other may bequeath more than one-half of his or her property." Not that the mere consenting to a will is sufficient, but that she must consent that he bequeath more than one-half of his property from her. The trial court found "that the consent of the wife was not fairly and understandingly given."

In *Weisner v. Weisner*, 89 Kan. 352, 131 Pac. 608, it was said in the opinion:

"Nevertheless it cannot be thought the legislature intended that a wife, under the stress of expected widowhood and actuated by a desire to please her husband . . . should be held bound by such consent when it fairly appears that she did not understand its effect upon her property rights." (p. 356.)

In *State, ex rel. Minn. L. & T. Co., v. Probate Court*, 129 Minn. 442, 446, 152 N. W. 845, it was said:

"We take the correct holding to be that when a trust and fiduciary relation exists, as there does between husband and wife, the wife having a legal right in case of the death of her husband, to some share in his property and reposing trust and confidence in him, there is cast upon the husband, in taking a consent to the making of his will, or to a codicil to it, the affirmative duty of making to his wife a fair disclosure of his property and her rights, so that her consent will be an actual one, based upon an intelligent knowledge of his property and the effect of her consent, as distinguished from one merely formal. As great a duty of disclosure as that stated is required in antenuptial settlements. If this is done, and the consent is not fairly and reasonably obtained by putting the wife in possession of the facts, which she ought to know in order to determine her course intelligently, she may, after his death, if she proceeds without laches, renounce her consent and elect to take under the statute. If the provision of the statute relative to descents, giving effect to a consent by one spouse to the will of another, without a reserved right of election after the death of the other, does not work justly under such a rule, it should not work at all. We have in mind no other trusts or fiduciary relation at all resembling that here involved, where the law requires one party to submit to a surrender at the instance of the other, of valuable rights,

though the surrender is made in compliance with all legal forms, if made in ignorance of the existence of such rights or without fair opportunity for investigation, the other party having full knowledge. The rule stated we adopt." (See, also, *Menke v. Duwe et al.,* 117 Kan. 207, 230 Pac. 1065.)

The plaintiff contends that the wife by her acts after the husband's death and the reading of the will, confirmed her consent. We hardly think so. Defendant testified:

"I did not know anything about my rights under the will. The first time that I ever had independent legal advice as to my rights under the will was at the probate court the second or third week after my husband's death."

It can hardly be said that she confirmed the consent when she had no knowledge of her rights. In 12 C. J. 425 it is said:

"A confirmation necessarily supposes a knowledge of the thing ratified, the term implying a deliberate act intended to renew and ratify a transaction known to be voidable."

If the defendant had no knowledge of her rights at the time of signing the consent to the will she cannot be held to have confirmed or approved it, and her consent cannot have amounted to a legal agreement to relinquish her statutory share. (*Jack v. Hooker,* 71 Kan. 652, 81 Pac. 203.) The plaintiff contends that it is not necessary for the widow to make an election where consent is given. (*Hanson v. Hanson,* 81 Kan. 305, 105 Pac. 444.) This is the general rule. There are, however, conditions under which the general rule does not apply; where, as in this case, the consent is not fairly and understandingly given, the rule has no application. In view of the fact that the defendant was requested by her husband to sign the will without knowledge of her legal rights and without explanation of the effect upon her rights to her husband's property if she consented, we think the court was fully justified in its finding that her consent was not understandingly given.

The judgment is affirmed.